All right, we have a full slate today, or cases, so you can only call any of them. I will advise the attorneys on this case and the other cases we're going to hear that we'll allow approximately 30 minutes for each case. So that means 15 minutes aside for the So we will begin by calling our first case. And if both attorneys want to step up and identify yourselves for the record. Good morning, I'm Assistant State's Attorney Kula Fournier for the record. What was your last name? Fournier. Fournier, okay. Good morning. Good morning, Deepa Punjabi representing the defendant appellant Kevin Skowron. Okay, Punjabi will be going first. Oh, I'm sorry, I knew there was something major I wanted to say. Justice Taylor is the third panel member on these cases. Although he is not with us this morning, he is And he will review the tapes from our oral arguments, and of course, obviously the briefs and records, but just wanted to add that little point. All right, Punjabi, you may proceed. Thank you, Your Honor. And before I begin, I'd like to reserve a few minutes for rebuttal, if I may. All right, certainly. So in this case, Mr. Skowron argues that he was deprived of a fair trial where the prosecutor engaged in a number of entirely exceed the bounds of propriety and professional conduct, and which had the effect of demeaning and humiliating the defendant before the jury, while at the same time unfairly bolstering the credibility of the State's own witnesses, as well as inserting the prosecutor's own opinions and assertions about the evidence while cross-examining the defendant. Now, the majority of this misconduct was not objected to or preserved in a fair trial, and Mr. Skowron argues that this Court should review the instances of misconduct under the second prong of plain error, which occurs when the error is so serious that it affected the fairness of the trial or the integrity of the judicial proceedings. The Illinois Supreme Court has repeatedly invoked the second prong of plain error when considering a serious pattern of prosecutorial misconduct, and this Court has also previously found that a pattern of intentional prosecutorial misconduct constitutes reversible second prong of plain error, the strength of the evidence notwithstanding. In People v. Nuwadi, for example, which I think was a Medicaid fraud case, this Court found that the defendant was deprived of a fair trial in that case due to the prosecutor's misconduct, where, as in this case, there the prosecutor improperly asked the defendant whether I think six witnesses were lying during cross-examination. And I think there was also some improper rebuttal argument about how the jurors should consider that the defendant socialized with other criminals. But just on those two instances of misconduct alone, this Court found reversible second prong plain error, and this Court noted that the evidence was sufficient to prove the defendant's guilt in that case, but the prosecution, whether motivated by cynicism or misdirected zeal, nevertheless engaged in calculated misconduct, which cast doubt on the jury's ability to make an impartial and unbiased determination of the defendant's guilt in his case. In addition to the improper questioning regarding whether, I think in this case, the State asked whether five witnesses were lying, the prosecutor also improperly inserted his own assertions and opinions about what he thinks actually occurred in the middle of his cross-examination of Skowron, and this occurred in two instances. The first had to do with the time that Skowron spent in detention. You know, the focus of the defense theory was that the conditions of Skowron's custody made him feel pressured to sign a confession, even as he denied committing this offense. And when the prosecutor interjected at this time, oh, no, it was only a few hours, but that's neither here nor there. Well, let me ask you about that. Sure. In terms of a few hours and 12 hours, isn't there testimony that the defendant, when he was first brought to the station, wasn't interviewed for a while because of, I don't know, I guess the detectives were waiting for interviews to occur? Wasn't there testimony about him eating and maybe the detectives didn't really start to interview him until 2 o'clock or so? What time do you think was the first interview? You know, if I recall correctly, I think Detective Erickson testified that he first spoke with Skowron around noon. I'm not sure if that's correct. I think that's what the testimony was. And he was arrested. Officer Dahlem, who was the transport officer, stated that he arrested him and brought him to the station around 945 a.m. So from Skowron's perspective, you know, he had just been hit in the face. He testified that he was asking for medical attention. To him, this felt like he was in detention, regardless of whether he was actually actively being interviewed at the time or not. Well, was that what they were referring to about when the interviews actually took place? You know, I'm not sure what they were referring to, but I think the larger point is that the length of custody was actually a relevant fact to the theory of defense. And for the prosecutor to... What time did the Assistant State's Attorney testify that she first spoke to Mr. Skowron? Gosh. Mid-afternoon? I think it was I think that's right. Would that be a few hours after he had lunch? It could have been, sure. Sure. But, you know, for the prosecutor to... He did say a few hours, and that was... I understand. You're suggesting that he was sort of testifying. He was testifying that this was... that he had been in what felt like detention to him, in any case, for 12 hours. And when the prosecutor interjected, this to the jury would have looked like the prosecutor's own personal assertion. No, I think it was only a few hours. And that is highly improper. It's not for the prosecutor to put what looks like their own assertion about the evidence, certainly not mid-examination. This is not law and order. What was the other example of his interjecting? The other interjection was the prosecutor was asking Skowron whether this was all just a coincidence and why would this little girl say something like this about him. And when Skowron responded, the prosecutor at that point just dispensed with questions altogether and began making assertions about what he thinks occurred, or certainly it could have looked to the jury as though he was making assertions about what he personally thinks occurred. And the Supreme Court in Illinois has pointed out that part of the reason it's so prejudicial to have a prosecutor make interjections about what he thinks occurred is because when it looks like he's inserting his own opinions, the jury is likely to endow the remarks made by a government representative with greater credibility than is accredited to other witnesses. So could that have been, though, characterized as kind of cross-examination? I mean, to say that, whether he gets the answer he wants or not, couldn't one characterize that statement as a form of cross-examination? I mean, it was a question in a sense. Well, it wasn't, you know, part of the problem is it wasn't put in the form of a question. It looked like an assertion, and it looked like an assertion of personal opinion from the prosecutor. I think it certainly could have been read that way by some jurors, and that's dangerous. Isn't it a style of cross-examination, though, that's often taught? The only difference between making that assertion and pausing and seeking an answer is inserting the word correct or isn't that correct? Are you saying that the failure to say, you know, you did this, and then just stopping and seeking an answer, or you did this, isn't that correct? That's plain error? Well, I think, certainly taken together with the other instances here, I think you have to look at this as a whole. This is just one more example of the prosecutor bolstering his own case and bolstering the credibility of his own case while demeaning the defendant. If you do look at the cross-examination as a whole, there's the defendant testified well, the testimony is about two pages or less. That's correct. His testimony. It's less than two pages. So, then you have extensive cross-examination, and most of it is not devoted to what you're referring to, is it? No, most of it is devoted to asking him whether, a lot of it is about that. Did he say, is there contrary authority? Is there contrary authority? Any contrary authority? On the lying issue? Well, not about lying, but, you know, asking a witness to explain whether or not this particular person was telling the truth or... Sure. The state cited People v. Piscotti in their brief for the proposition that this improper questioning was invited by the defendant's direct examination, but in Piscotti, the defendant explicitly accused the police on direct examination of a fabrication, whereas here, Skowron denied committing the crime, but he never on direct examination. As you noted, this was a very brief direct examination. It was. I mean, and that's part of the, well, if you look at the cross-examination, it's rather extensive, but when the defendant says that, what was his statement, basically, that he was told if he made an admission, he'd be able to go home? If he admitted the allegation... If he signed what they put in front of him, he would be able to go home and that maybe they would give him some leniency. He said, I thought maybe they would give me a lesser charge or something. Yeah, and so, was that at least a fertile area for cross-examination? Well... Isn't that kind of what this was about? One of the comments that the prosecutor made was if the police said, you know, that you killed three people, but you can go home as long as you sign the admission. Sure. I think it's comparing that to the allegation of a predatory sexual assault upon a four-year-old girl. Sure. The prosecutor could have explored that area, but not in this case. But what I'm trying to tell you is that this sort of questioning, asking a defendant whether the witnesses are outright lying, is generally improper. There is a small exception if it was invited on direct examination. But, you know, I don't... Because his testimony perhaps contradicted Detective Erickson's, I don't think that that invites this kind of... Isn't the state citing Coker Ellis for the proposition that this type of questioning is invited in a circumstance where the defendant testifies that he made a statement, a confession that was untrue, and the details of that That's their position. Coker Ellis, if I recall... Why does Coker Ellis lie? Sure. If I recall Coker Ellis correctly, they stated... They did suggest that this kind of questioning can be invited on direct examination if there is some allegation of lying or conspiracy, which they thought maybe there was some sort of allegation in that case. But I don't think they actually ruled on that point. I think they went ahead and said, well, even if we hold this questioning to be improper, you still lose because of, I think, the strength of the evidence, if I recall correctly. So they didn't really say one way or the other in that case. They did suggest that... Well, they said the same thing as this Court said in Piscotty, which is that where there is an allegation of conspiracy or fabrication, then that questioning can be invited. But certainly... Was this a situation involving fabrication? I don't think he accused anyone of fabricating anything. And certainly he did not accuse NJ. He did not accuse Assistant State's Attorney Mina, Dr. Carroll, Officer Dahlem. And State asked about all of these witnesses. None of that... I don't think in a one and a half page direct examination you can say that all of that was invited by the direct examination. And I think you also have to look at the manner in which and tone of the questions. Because when you look at the manner and tone of these particular questions, it belies the argument that these questions were only intended to rebut a suggestion that the State's witnesses were lying. The reason this type of questioning has been held improper is because it has the effect of demeaning the defendant and making him look ridiculous before the jury. And when you look at the tone and manner in which these questions were asked, ridiculing Scarron seemed to be the prosecutor's primary intent. You know, he asked if Scarron was stupid. He asked if Detective Erickson was lying out of the blue and just fell out of a police cloud in heaven to come interrogate him. So this... When you look at the manner and tone of the questioning, I think you can read into it... Would you say it was pervasive? Would you say that this was a false examination? I would say so. I think that's what, you know, the pointing the finger and interrupting him and making assertions was about. I would say absolutely that it was pervasive and serious. You know, again, this court in Nuwadi described this as a very egregious error, this kind of questioning. And they made the same point, I think, in that case that... Because I believe in that case the State also made the same argument that this was invited by direct examination. And they said no. You know, just because a defendant's testimony contradicts the State's witnesses, as it almost always will, that's not enough to invite this kind of questioning. Is there an inference from his limited testimony, the defendant's very limited testimony, is there an inference to be drawn that there is some sort of untruthfulness going on with every single witness? He testified for a page and a half, as you say. Correct. But is there an inference there that there's something untruthful about this whole case? You know, maybe, maybe not. We don't know what happened, and maybe this little girl thinks something happened, but the defendant is saying it didn't happen in the way she thinks it happened. I don't know that that necessarily has to raise an inference of lying. I also want to talk a little bit about the rebuttal argument, the State's rebuttal argument. The State's rebuttal argument began by addressing Skowron directly and sarcastically saying, you know, I just want to apologize to you, Mr. Skowron, for the chamber of horrors you were put through and all the inconvenience you were put through. It's impermissible during closing arguments to make comments that are irrelevant to the question of guilt or innocence or to just make fun of the defendant. So that was improper. But what was even more important was that the defendant, in view of Detective Erickson's status as a police officer, the prosecutor argued to the jury that they need to stand up and say thank you to Detective Erickson for doing his job as a police officer in this case, and that would have encouraged them to view Detective Erickson more favorably simply because of his status as a police officer, and this manner of argument has been repeatedly condemned by this Court and by the Illinois Supreme Court. In fact, there was a similar appeal to the jurors by the prosecutor to show gratitude to the police. Like Blue, there were lots of other errors as there are here, but the prosecutor in that case asked the jurors to send a message showing that they supported the police. Was Detective Erickson referred to by the defense attorney at all? Was there any response to anything that was said? Well, this is the problem, right? This was on rebuttal, and this exacerbates the prejudicial impact of these statements because the defense counsel didn't have the chance to address the jury again and say, you know, remind them, hey, look, remember, you're going to be instructed that a police officer's testimony should be viewed just the same as any other witness. So that exacerbated the prejudicial impact of these improper statements. But were the comments in the rebuttal a response to any defense argument in the defense closed concerning Erickson? You know, I can't remember exactly now what the focus of the defense argument was with respect to Detective Erickson. Certainly there was a credibility contest between Detective Erickson and Skowron in that their accounts differed, but it's never proper to play on a juror's bias in favor of a police officer. And this sort of argument would have, it could lead the jurors to feel obliged to show, the prosecutor is saying you need to say thank you, you owe him something, we all owe him something. This could lead them to feel obliged to accord more credibility or respect for his account of events simply because of his conduct. Now, should this court decide not to review this as plain error, Skowron also argued that his counsel was ineffective for failing to object to these various instances of misconduct. Of all the misconduct that was complained of in my brief, the only ones that received an objection were when the prosecutor asked Skowron if he was stupid, and when the prosecutor asked if Detective Erickson was stupid, and when the prosecutor asked if Detective Erickson fell out of the police cloud in having to come interrogate Skowron. And both objections were overruled, and I don't think any of these errors were included in a post-trial motion. So several districts of the appellate court have previously found a defense counsel's performance to be deficient for failing to object to multiple instances of prosecutorial misconduct. So it is well established that where counsel fails to object to a pattern of pervasive prosecutorial misconduct, this can constitute deficient performance. There's also a reasonable chance that the outcome of this case could have been different had counsel properly objected and kept some of these improper comments out. As I stated just now, this was essentially a credibility case. It hinged on whether the jurors believed NJ's account or Skowron's denial that this was a child's statement. When you say that, weren't there other witnesses? This wasn't simply a four-year-old and then the defendant? You're right, Your Honor. But the other witnesses were just repeating permissible hearsay, but hearsay accounts of this child's statement. It really came down to her account versus Skowron's denial. But then you forgot about the assistant state's attorney who had a statement that was reduced to writing, and then you have a doctor who  said there was some redness. I think she said there was some redness. There was an adjective before the aggravated assault. I can't recall what she said. The medical doctor. Yeah. It was at Northwest. In her opinion, there was evidence of a sexual assault. I don't believe that's the case. No? I thought that the record, I thought her testimony was that there was some redness, and that was inconclusive. It could be. Sometimes that could be evidence of a sexual assault. Sometimes that could be evidence of other physical activity. But I don't believe that's the case. Okay. But she couldn't say for sure. I thought she had an opinion definitely about this. I'm, perhaps I'm recalling incorrectly, but that's not my recollection of the record. All right. In any event. In any event, you know. I thought this is what she said. NJ, this is Dr. Carroll. Dr. Carroll. The redness was practically a center in diameter, and that her expert opinion was that NJ's redness and tenderness was consistent with digital penetration. And that NJ was acutely sexually assaulted. I don't think that. That was in her direct testimony? Yeah, that was her direct testimony. Now on cross. I think on cross examination, she admitted that this is not always, this sort of redness is not always consistent with sexual assault of this kind. I don't know. I think she said that there could be other causes that would make the entire surface of the labia red. But she testified that based on everything she reviewed, her opinion was that it was an acute sexual assault. Anyway, that's what I read in the record. Okay. I could be wrong. Sure, but you know. What she said was that the other explanations for the redness, such as infections or allergies. Correct. However, she, I think, discounted those. As a cause in this case. Because she said in those. Because of the localized nature. Because of the localized nature of the redness. Okay. Either way, you'll have some time for rebuttal. Can you sum up now? I can sum up. I just want to point out that this was a single count case. It's a simple case. It's not the kind of case where the jury had to parse through different shades of intent or complex facts. And yet they still took five hours to deliberate. So this, they certainly didn't think this was an open and shut case. So here we believe Scowron can show both deficient performance and sufficient prejudice to make a showing of ineffective assistance of counsel. And we also believe that the prosecutor's pattern of flagrant and pervasive misconduct is reversible as plain error. Therefore, we ask that you reverse Scowron's conviction and remand for a new trial. All right. Thank you. We'll hear from the Assistant State's Attorney now. Thank you. Again, for the record, this is the State's Attorney from California on behalf of the people of the State of Illinois. May it please the Court. The defendant is not entitled to a new trial where the prosecutor's comments were not improper and did not deprive the defendant of a new trial. As the defendant points out, the issues are waived for appellate review purposes as the prosecutor's comments and questions were not objected to at trial and were not included in any post-trial motions. However, the defendant has also failed to demonstrate under plain error that fundamental fairness was affected in any way. And certainly, the defendant is conceding that this was not a closely balanced case because as counsel just came up here and argued, she argued essentially under the second prong of plain error arguing fundamental fairness. And that being said, as the prosecutor's comments and questions did not constitute clear or obvious error. In regards to the veracity issue, the prosecutor was correct in questioning the defendant during direct examination regarding the veracity of the State witnesses when the defendant during his direct testimony indicated that he heard the witnesses testify during the trial, that he never sexually abused NJ, and that essentially his confession was coerced. Detective Erickson, he signed his confession. There is authority, isn't there? That this kind of cross-examination specifically asking a defendant if this witness is lying, if this witness is lying. I mean, he went through every witness, didn't he? He did almost go through every witness. Yes, Your Honor. And he basically asked the defendant, are they all lying? Is this one big conspiracy? I mean, there's sort of contrary authority on this point, isn't there? You know, I don't think there is, Your Honor, because I think that Koukouralas and Piscotti are on point in that in Koukouralas, the defendant during his direct examination testified that his confession was coerced, that it was the product of essentially the police feeding him the information and then him giving that information to the Assistant State's Attorney, that he was mistreated by the police and also made promises of a more lenient punishment. And there in Koukouralas, the court held that it was proper based on the direct testimony of the defendant essentially those questions by the prosecutor were invited by the defendant's direct testimony. In Piscotti, very similar situation. The defendant testified during his direct examination that the state witnesses had lied and that his confession was coerced. Well, in this case, in his direct, the defendant didn't really get into any of this about the other witnesses, did he? He was basically saying, I had a broken nose, I was injured, I complained to the police, and that the detective basically told me if I admitted to this, that I would at least get to go home. He wasn't really suggesting that these other people were lying. That's not what he said on his direct. I mean, his direct was extremely limited, but he did not suggest that everybody else had a lie or that they were lying. Did he? Your Honor, I think he did. I think he made the inference and certainly the insinuation. When he testified, he was asked, did you hear all these witnesses testify here during this trial? And he indicated that he did and that he never sexually abused NJ. That is certainly an inference that all those state witnesses were being untruthful with their testimony. The fact that he heard them, I don't know, I'm not sure how we reach this next inference. I don't know how we go from I heard the witnesses testify to now that they're all lying. He basically was putting it on one person, Erickson. I thought that he was telling me the truth. He was, but he was making the inference based on the fact that he did indicate that he heard these witnesses testify that he never sexually abused NJ. That was an inference that all of these witnesses who testified during the trial, including Detective Erickson, were not being truthful with their testimony. Is it proper for the prosecutor in cross-examination or any to testify or inject statements, opinions about the evidence? It's certainly not proper, and that wasn't what the situation was here, Your Honor. There was no clear or obvious error that were made by the prosecutor's comments during that cross-examination. In regards to the first comment that counsel pointed about, it was a few hours, let's not nitpick, not here nor there, that was, there was a reasonable debate Well, he said it was a few hours. Now, is that a statement of a prosecutor giving an opinion? Which I don't think he's supposed to do. It isn't because, again, there was a reasonable debate as to the characterization. Was that a question? It wasn't a question, Your Honor. It was a way for the prosecutor, who during the cross-examination, the defendant was not cooperating, not answering the prosecutor's questions What about, are you stupid? Is that the kind of thing we want to see or hear? Your Honor, the are you stupid question was clearly a way for the prosecutor in this specific situation to discredit the defendant's theory of the case. Can he do it without that? Did the detective fall out of a cloud? Is that somewhat demeaning? Would you say there's a bit of ridicule, sarcasm injected in that one too? I think that certainly prosecutors are allowed to not, certainly expected not to be dull and passionless. I certainly think there's a certain level of invective that is expected during closing arguments and the same should hold true for cross-examination. And I think that in this specific situation, the prosecutor with those specific questions was, again, trying to discredit the defendant's theory of the case. The defendant's theory of the case was that he was just merely working that day at the YMCA out of nowhere gets approached by a person who punches him. He receives a bloody, broken nose. He's taken to a police station where he claims he did nothing wrong and he is coerced by Detective Erickson into giving a confession in exchange for being told that if he signed that confession, he would be able to go home and that he would receive a lesser punishment. So clearly with that specific stupid question, it was followed up directly with the prosecutor getting into the defendant's educational background to show how it wasn't logical for the defendant to believe, based on his educational background and based on his background in totality, it wasn't logical for the defendant to believe that he would sign a confession that he sexually abused a four-year-old child but that he would be able to go home and receive a lesser included punishment. I think you have to kind of stay by the microphone so that everything can be accurately recorded. And that was the way that the prosecutor chose to present or question the defendant in order to discredit the defendant's theory of the case. Now it certainly is not clear obvious error and it was also meant to, in regards to the comments, again, those were meant merely to, again, attack the defendant's theory of the case. The finger to the vagina comment where the defendant asked or commented, rather, whether that I'm sorry, that the defendant, you had your finger in the vagina of a four-year-old girl. That's where you had it, sir. Now, as Your Honor pointed out earlier, certainly this was meant, it's cross-examination and it was meant for if a specific comment had a didn't you attached to it, there would be no basis for complaint. So it is very obvious and clear from the record that it was not meant to interject any personal testimony or commentary by the prosecutor into the record. It was merely meant for impeachment purposes. And certainly blue is not in any way comparable to this specific case. The testimony that was presented and interjected in blue through in addition to all the other errors that were committed in blue which caused its reversal is not comparable at all to this case. Certainly fundamental fairness was not in any way affected in this case. It is not comparable to blue. In blue, in addition to the testimony through the thinly veiled objections that were made, there were a series of other errors including the prosecutors being allowed to display the victim's blood splattered uniform on the headless mannequin during the trial, the prolonged testimony about the victim and his life. Blue is kind of the outer limits of error. That's I don't know that most cases would be compared to that. But if you're taking things on a scale or putting them in a spectrum, blue is the very far end of impropriety and error that denied the defendant a fair trial. So I mean yes you can distinguish the case but again that's like the far end. There's cases certainly in between that don't reach that level that could certainly still amount to the deprivation of a fair trial due to error that occurred in the presentation of the state's case. Blue is really just the most extreme example and certainly other cases could amount to error deprived a defendant of a fair trial without going to that kind of level. I understand that. I'm just really trying to contrast blue because it was presented by the defendant and the defendant is trying to compare the commentary that was made by the prosecutor in blue to the comments that were made here which I think are in no means in any way comparable. Now in regards to the arguments that the prosecutor made during rebuttal argument, there were also no clear obvious errors made in regards to the two instances that defendant is complaining of and specifically the first instance where the prosecutor indicated for the jury to stand up and thank Detective Erickson for doing his job that was That's generally considered improper. We don't thank the police officers for doing their job. Do we? At least that's not I shouldn't say we but that's not the kind of comment that the prosecuting attorney should make to the jury. I don't think there was anything improper with the comment, Your Honor. There were serious allegations that were presented throughout the defendant's theory of the case and in addition in the defendant's closing argument. There were several times where the defendant in his closing argument referred to Detective Erickson how the confession was coerced  for the prosecution It was a direct response. It was invited by the defendant's theory of the case and by the defendant's closing argument and the prosecution was entitled to rebut those allegations and remind the jury that Detective Erickson was simply doing his job and that he did not coerce the defendant into giving the confession. Now Rogers again is not similar to the instant case. The prosecutor there indicated that the officers were seasoned veterans or credibility was untouchable that they would not get on the witness stand and lie in addition to other errors that were committed in Rogers. That bolstering of testimony that was done in Rogers certainly was not done here. The prosecutor did not argue that you should believe Detective Erickson because he's a police officer or he wouldn't lie to you. Simply it was in response to the defendant's closing argument and reminding the jury that Detective Erickson did his job, was doing his job and when looking at the prosecutor's rebuttal argument as a whole it's clear that all of his arguments were supported by the evidence and were truly meant to discredit the defendant's theory of the case and to show the jury how the defendant's theory of the case didn't make sense and was not supported by the evidence. Same thing holds true for the sarcastic comment that was made directed toward the defendant as the defendant argues apologizing to the defendant during rebuttal argument. Again, that was an attack on the defendant's theory of the case. The defendant portrayed himself as the victim who was at the wrong place at the wrong time and the prosecutor was merely trying to discredit how his theory of the case was clearly not supported by the evidence. And some cases that defendant refers to showing extreme disdain for example, People vs. Davis that is not the situation that was displayed here by the prosecutor. Certainly the prosecutor didn't crumble up a piece of a defense exhibit or even call witnesses the worst liars as the prosecutor did in Davis. Moss is another case where although the court held that improper comments were made the comments the error did not constitute reversible error where the evidence was overwhelming and that is clearly the case here. There was as defendant concedes there was certainly this was not a closely balanced case the evidence was overwhelming. I want to touch on Dr. Kural's testimony. Dr. Kural testified that the same day he examined the victim, examined NJ and that she was shy she was nervous and it took a lot for the doctor to examine NJ but once the doctor was able to do so the doctor discovered a red marking about a centimeter in diameter and the doctor testified in his expert opinion that it was her, sorry. Yes, I apologize. Thank you. The doctor testified that in her expert opinion it was consistent with digital penetration and acute sexual penetration and that is obviously very important evidence in addition to NJ who testified that she immediately out cried after the incident she was in the pool, the defendant was her instructor, he had his hands underneath her as she was trying to grab the straw. We are familiar with the evidence so if you want to sum up I would appreciate it. No problem, thank you. And your honors, in addition to obviously because of the overwhelming amount of evidence even if the prosecutor's comments were made in error, the errors were harmless at best where the outcome of the trial would not have been different and the evidence here certainly was not in any way closely balanced but was very stacked against the defendant. Fundamental fairness was also not in any way affected in this case and certainly this is not a situation where the integrity of the judicial proceedings was in any way compromised. In very brief response to the ineffective assistance of counsel argument certainly counsel has conceded that this was not a closely balanced case so therefore under the prejudice prong counsel has not, the defendant has not established how the outcome of the trial would have been different. The outcome of the trial would not have been different even if the defense attorney had objected to the prosecutor's comments or questions again based on the overwhelming amount of evidence against the defendant. And based on the arguments presented to this court we would ask that you affirm the defendant's conviction of predatory criminal sexual assault. Would you have a brief response? Your honors, I would quarrel with the state's statement that I've conceded that this was not closely balanced. Yeah, I don't think you've conceded that anywhere in your brief so. Sure, and so you know the state spent a long time talking about the strength of the evidence. In this case I was particularly struck by the pervasiveness and flagrancy of this misconduct so I focused on the second prong of plain error and as you know that does not implicate the strength of the evidence. So the state has spent a long time now arguing the strength of the evidence before you but there are several Supreme Court cases Blue, Johnson, Whitlow, Linscott, several Supreme Court cases that stand for the proposition, they've reaffirmed this holding over and over again that the basic integrity of the judicial proceedings can be affected where the prosecutor's conduct, where the prosecutor engages in misconduct that is intentional and extensive. Now there was just, there was an argument that this, the notion that the state's comment to the jurors about thanking Detective Erickson was invited by the closing argument of defense counsel. I just want to address that for a moment. The state is certainly entitled to respond to a credibility attack on Detective Erickson but they are only allowed to do that by arguing the evidence. That is not what they did here. By focusing on his status as a police officer, by saying to the jurors you need to stand up and say thank you to this man they're playing on his role as a public servant, they're playing on his status as a police officer. That is not an argument that implicates the evidence and they are only entitled to argue the evidence and the inferences that can be made from the evidence. So that comment was improper. I think that sort of argument has been roundly condemned. With respect to some of the other antics that the prosecutor engaged in calling him stupid and the assertion about where his finger being in this little girl's examination, it's just been argued that the state's not required to be dull and passionless and that they're entitled to discredit the defense theory. Again, certainly they're entitled to discredit the defense theory by arguing the evidence at the time of argument and I don't think the court should countenance hurling insults at the defendant calling him stupid. That sort of thing is better suited for television than real life. And I just want to point out again that there was no inference from the defendant that all of the state's witnesses were lying. As you pointed out, this was an extremely brief direct examination. He never said a word about these other witnesses. Even with his testimony contradicted Detective Erickson's, I don't think that rises to the level and NAWADE stands for the proposition that that does not rise to the level of inviting that kind of questioning are all of you guys lying on a cross-examination. I want to point out that the Illinois Supreme Court has noted in several of the cases addressing this issue, their frustration that the issue of serious prosecutorial misconduct appears to be an ongoing problem that concerns them. And in Johnson the Illinois Supreme Court stated that they're alarmed by the frequency with which they see serious prosecutorial misconduct. And they even cited language suggesting to reviewing courts that simply issuing an opinion with disapproving language but no real consequences may only embolden some prosecutors to continue in this sort of behavior because that hasn't been enough to curb this sort of behavior before. Were there any other questions from the court? Therefore, for the reasons argued in our brief and here today, we respectfully ask that you reverse Skyron's conviction and remand for a new trial. The matter was well argued, well briefed and it will be taken under advisement and we're going to